IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

SUZANNE M. JOHNSON,

    Plaintiff,

vs.

MICHAEL J. ASTRUE[1]
Commissioner of Social Security,

    Defendant.

Civil Action No.
**3:06-CV-105 (CDL)**

## RECOMMENDATION

The plaintiff herein filed an application for disability insurance benefits on August 21, 2001, and an application for Supplemental Security Income benefits on April 19, 2004. The applications were denied initially and upon reconsideration; plaintiff requested a hearing before an Administrative Law Judge, which was held on April 24, 2004. On November 8, 2004, the ALJ denied plaintiff's claim. On December 16, 2005, the Appeals Council affirmed the ALJ's decision, making it the final decision of the Commissioner. The plaintiff subsequently filed an appeal to this court. Jurisdiction arises under 42 U.S.C. § 405(g). All administrative remedies have been exhausted.

DISCUSSION

In reviewing the final decision of the Commissioner, this court must evaluate both whether

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security and should, therefore, be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this action. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Richardson v. Perales, 402 U.S. 389, 401 (1971). In reviewing the ALJ's decision for support by substantial evidence, this court may not re-weigh the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." Bloodsworth, 703 F.2d at 1239. "In contrast, the [Commissioners'] conclusions of law are not presumed valid....The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." Cornelius, 936 F.2d at 1145-1146.

20 C.F.R. § 404.1520 (1985) provides for a sequential evaluation process to determine whether a claimant is entitled to Social Security disability benefits. The Secretary employs the following step-by-step analysis in evaluating a claimant's disability claims: (1) whether the claimant is engaged in gainful employment; (2) whether claimant suffers from a severe impairment which has lasted or can be expected to last for a continuous period of at least twelve months; (3) whether claimant suffers from any of the impairments set forth in the listings of impairments provided in Appendix 1; (4) whether the impairments prevent claimant from returning to his previous work; and (5) whether claimant is disabled in light of age, education,

and residual functional capacity. Ambers v. Heckler, 736 F.2d 1467, 1470-71 (11th Cir.1984). Should a person be determined disabled or not disabled at any stage of the above analysis, further inquiry pursuant to the analysis ceases. Accordingly, if a claimant's condition meets an impairment set forth in the listings, the claimant is adjudged disabled without considering age, education, and work experience. 20 C.F.R. § 404.1520(d).

The ALJ determined that plaintiff had "severe" impairments consisting of carpal tunnel syndrome and epicondylitis on the right, treated surgically; chronic cervical and lumbar strain; depression; and post traumatic stress disorder. The ALJ found that she could perform light to sedentary work reduced by an inability to lift and carry more than ten pounds at a time on a frequent basis; use her arms for overhead work; use her right upper extremity more than occasionally for gripping and handling functions, but could frequently perform those functions with the left upper extremity; perform unlimited bending of her elbows if no weight is in her hands; and would be restricted to semi-detailed tasks and cursory interaction with the public, but that she could not perform any of her past relevant work. The ALJ concluded that there existed a significant number of jobs plaintiff could perform, including information clerk, surveillance system monitor, parking lot cashier and attendant, and a ticket taker, and therefore was not disabled.

The relevant medical evidence shows that Johnson was first injured on August 23, 1990. (Tr. 292), and was diagnosed with chronic medial epicondylitis and chronic forearm flexor strain, and limited lifting and chronic repetitive motions. (Tr. 366). In January 2000, Johnson hurt her right forearm, right shoulder, and right elbow at work, (Tr. 302, 378), and was restricted to working without using her right arm, lifting or power grasping until her June surgery. (Tr. 441-

3

443). Dr. Linburg performed "neurolysis and an anterior translocation of the ulnar nerve, right elbow, a revision of extensor origin, lateral epicondyle, right elbow, and endoscopic release, carpal tunnel, right hand." (Tr. 300, 307-308). At the end of November, she could return to work, with no lifting or power grasping. (Tr. 295, 434).

In December 2000, an agency physician concluded that plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, and sit, stand and/or walk for about 6 hours in an 8-hour day. Her ability to push and/or pull with her upper extremities, (Tr. 331), and her ability to reach overhead and handle large and heavy objects with her right upper extremity was limited. (Tr. 313). She needed to avoid concentrated exposure to vibration with her right upper extremity. (Tr. 314).

In January 2001, Dr. Linburg restricted plaintiff to lifting no more than 10 pounds and no repetitive use of her right extremity. (Tr. 433). She reported "essentially complete relief of preoperative sharp dorsal forearm pain," but sill had discomfort at her wrist and elbow, with trouble with wrist extension and weight bearing, and persistent numbness and tingling in the ring and little fingers that were unchanged from before the surgery. (Tr.394). In May Dr. Linburg concluded that plaintiff had reached "maximum benefit from medical care" with a 20% permanent partial disability of her right upper extremity (Tr. 430) and a 2% permanent partial functional impairment of the right hand. (Tr. 294). A year later he advised Johnson that her ring and little fingers would always be dysesthetic." (Tr. 428).

In September 2001, Dr. Jolda, a consultant, found that plaintiff had tingling of the $4_{th}$ and $5_{th}$ fingers on her right hand and numbness of the $4_{th}$ and $5_{th}$ fingers of the left hand. Her hand and finger dexterity were normal with full ROM at all joints. (Tr. 319). He concluded that she had

4

some mild bursitis/tendonitis of the shoulders and left ulnar nerve findings. (Tr. 320).

That same month Dr. Murphy, a psychologist, administered the Beck Depression Inventory to plaintiff, who scored 36. Dr. Murphy diagnosed major depression, mild, recurrent, and opined that "[h]er ability to work is uncertain since it partly depends on her medical condition. From a psychological perspective, with initiation of counseling and psychotropic medication, depression may be alleviated." (Tr. 323-324).

In October 2001, a non-examining agency consultant opined that plaintiff's activities of daily living were moderately limited and that she had moderate difficulties in maintaining social functioning, concentration, persistence or pace. (Tr. 340). She was moderately limited in her ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal work period without interruptions from psychologically based symptoms and perform at a consistent pace, act appropriately with the public, get along with co-workers, maintain socially appropriate behavior, and set realistic independent goals. (Tr. 325-326).

In August 2002, Dr. Einhorn, a psychologist, found her mood depressed and lethargic, and affect restricted. (Tr. 345-346). He concluded that she has long history of depression possibly associated with her childhood sexual abuse, which was not currently being treated. He noted that "[h]er depression should improve when antidepressant medication is restarted. However, it is sometimes the case that medication does not significantly improve chronic depression." He opined that she could understand and carry out both simple and complex instructions, could stay focused, and that while she had the ability to get along with the public, supervisors, and coworkers, "she may not feel like interacting socially." (Tr. 347).

In September 2002, a non-examining psychologist opined that plaintiff's affective disorder was not a severe impairment, (Tr. 348) and that she had mild limitations in the 3 areas of mental functioning required for work, with no episodes of decompensation. (Tr. 358).

From March 2003 to April 2004 plaintiff was treated for her anxiety, depression, and PTSD at GRN. (Tr. 401-427, 451-464, 473-475). Prozac and Trazodone were prescribed. (Tr. 427, 464).

In December 2003, Dr. Kim's neurological exam showed impaired pinprick sensations in the entire left upper extremity and pain with flexion and extension in the cervical and lumbar spine. (Tr. 471). His EMG/NCV studies of plaintiff's left upper extremity were "suggestive of cubital tunnel syndrome," with no electrophysiological evidence of radiculpathy. She had a normal EMG with delayed motor conduction velocity of [the] ulnar nerve across the elbow joint" and "[r]elatively prolonged sensory latency of [the] ulnar nerve." (Tr. 467-468).

In April 2004, Dr. Oldham of GRN reported that plaintiff suffered from the following symptoms: sleep and mood disturbance, personality change, emotional lability, recurrent panic attacks anhedonia, time or place disorientation, social withdrawal, decreased energy, obsessions or compulsions, and intrusive recollection of a traumatic experience, feelings of guilt/worthlessness, difficulty thinking or concentrating, suicidal ideation, generalized anxiety, hostility and irritability. (Tr. 477-478). Plaintiff reported flashbacks, numbing effects, frequent dissociations, poor memory, lack of interest, a poor support system, and constant pain. Dr. Oldham diagnosed major depression and PTSD, stating that she was not a malingerer, that her impairments could be expected to last at least 12 months, and that her psychiatric condition exacerbates her pain. (Tr. 478-479).

In May 2004, Dr. Kim stated that plaintiff had chronic cervical and lumbar strain, cubital tunnel syndrome, and pain in the neck, shoulders, right elbow, and lower back. (Tr. 481). He concluded that plaintiff would miss work more than 3 times a month because of her impairments. (Tr. 485). She would need to take unscheduled breaks every 20 minutes for 5 minutes, could occasionally lift less than 10 pounds, could never reach overhead, and could use both of her hands 10%, and her fingers 20%, of an 8-hour workday. She could sit for 20 minutes at a time, for 4 hours total, stand for 10 minutes at a time, for 2 hours total, and walk for 20 minutes, for 5 hours total during a 8-hour workday — she needs a job where she can shift positions at will. (Tr. 484).

*Special Technique*

The ALJ found that Johnson's depression and PTSD are severe impairments; yet, she failed to follow the "special technique" dictated by the Psychiatric Review Technique Form (PRTF) for evaluating mental impairments. This technique requires separate evaluations of how a claimant's mental impairment impacts four functional areas: activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation. The ALJ is required to incorporate the results of this technique into the findings and conclusions. 20 C.F.R. § 404.1520a-(e)(2).

The Commissioner concedes that the ALJ failed to complete the PRTF, but argues that the ALJ complied with the spirit of the regulation by evaluating plaintiff's mental condition. (Tr. 79-80). The ALJ did thoroughly discuss the medical and other evidence in the record relative to plaintiff's mental condition. However, the ALJ did not discuss the impact of plaintiff's mental

impairments on the four functional areas.² Because the ALJ's decision lacks consideration of all four of these factors and their impact on her ultimate conclusion as to plaintiff's residual functional capacity, one cannot evaluate the decision to determine if there is harmless error as the Commissioner asserts. Moore v. Barnhart, 405 F.3d 1208, 1214 (11th Cir. 2005).

Therefore, remand is warranted. Upon remand, the ALJ should incorporate an assessment on all four of the functional areas and their impact on plaintiff's residual functional capacity.

*Treating Physician*

Plaintiff asserts that the ALJ did not give proper consideration to several examining and treating physicians in the record.

Plaintiff contends that the ALJ failed to give sufficient consideration to a consultative psychological examination performed by Dr. Murphy in September of 2001, who assessed plaintiff with a Global Assessment of Functioning (GAF) of 50. (Tr. 323). However, the ALJ did note the examination, and the diagnosis of mild recurrent major depression. (Tr. 79, 323). The ALJ also noted the other GAF scores of 51-60 in the record, which would indicate moderate symptoms. (Tr. 80).

The ALJ also discussed the consultative psychological examination of Dr. Einhorn from August of 2002, who diagnosed dysthemic disorder. (Tr. 79, 346). Dr. Einhorn opined that plaintiff could understand and carry out both simple and complex instructions; get along with the public, supervisors and coworkers; sustain focused attention which would permit the timely

---

²The ALJ did find that plaintiff was limited to "cursory" interaction with the public. (Tr. 80).

completion of assigned task and a productions schedule; and would not be vulnerable to mental decompensation due to stress in the work setting. (Tr. 347, 400). He noted that plaintiff's depression should improve with the restart of antidepressant medication. (Tr. 347, 400).

The Court of Appeals has held that good cause must be shown if the opinion of the treating physician is discounted; a non-examining physician's opinion is entitled to little weight if it is contrary to the opinion of the claimant's treating physician. See Broughton v. Heckler, 776 F.2d 960 (11th Cir.1985). "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir.1986).

"The opinions of nonexamining, reviewing physicians, ... when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir.1987). A consultative examination is not to be given greater weight than the opinion of a treating physician. Hillsman v. Bowen, 804 F.2d 1179 (11th Cir. 1986). However, a treating physician's opinion may be discounted if it is not accompanied by objective medical evidence or is wholly conclusory. Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987).

The undersigned finds that the ALJ adequately evaluated the opinions of the medical sources.

*Residual Functional Capacity*

Plaintiff asserts that the ALJ failed to comply with SSR96-8p in assessing her residual functional capacity. The undersigned has determined above that the ALJ erred in assessing plaintiff's residual functional capacity with regards to her mental limitations. A review of the decision and of the record shows that the ALJ adequately determined the remainder of plaintiff's

residual functional capacity and therefore remand on that basis is not warranted. This court may not re-weigh the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." Bloodsworth, 703 F.2d at 1239.

*Failure to Develop the Record*

Plaintiff asserts that the ALJ should have obtained additional information from plaintiff's treating sources or ordered a consultative examination to clarify plaintiff's ability to perform repetitive work. There was adequate medical and other evidence in the record. A consultative examination need not be obtained to establish absolute certainty about a claimant's condition, as the Social Security Act requires only substantial evidence to support the ALJ's findings. Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988).

*VE/DOT Discrepancies*

Plaintiff asserts that the ALJ's decision does not explain discrepancies in the record between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT) and did not comply with the requirements of SSR 00-4p.

The ALJ limited plaintiff to only occasionally using her right upper extremity and frequently using her left upper extremity for gripping and handling and to only cursory interactions with the public. Given these restrictions, the VE identified 5 jobs that plaintiff could perform.

Plaintiff asserts that she cannot perform these jobs as both parking lot cashier (211.462-010) and parking lot attendant (915.473-010) require frequent reaching, handling, and fingering, and a ticket taker (344.667-010) requires frequent reaching and handling with occasional fingering. None of these positions can be performed by someone who is limited to only occasional handling

and gripping with her right upper extremity. Additionally, the cashier, ticket taker, surveillance system monitor (379.367-010) and information clerk (237.367-022) all require frequent talking, and every job defines the interaction with people as significant. An individual who is limited to a cursory interaction — even one defined as superficial — would not be able to engage in "significant" interactions with people.

The vocational expert was extensively examined at the hearing as to the jobs specified. During the hearing, the vocational expert, plaintiff's representative, and the ALJ all referred to the DOT. (Tr. 551-559).

Although the testimony from the vocational expert was unchallenged at the hearing, upon remand the ALJ should consider the discrepancy in the testimony of the vocational expert with the DOT regarding manipulation requirements of the various jobs.

Inasmuch as the Commissioner's final decision in this matter is not supported by substantial evidence, it is the RECOMMENDATION of the undersigned that the Commissioner's decision be **REMANDED** pursuant to Sentence Four of § 405 (g) for further consideration in light of this opinion. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Clay D. Land, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 7th day of February, 2008.

//S Richard L. Hodge
RICHARD L. HODGE
msd                    UNITED STATES MAGISTRATE JUDGE